[Cite as *State v. Mele*, 2026-Ohio-2604.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CHRISTOPHER C. MELE,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 25 CO 0046

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 24 CR 33

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Vito J. Abruzzino,* Columbiana County Prosecutor and *Atty. Alec A. Beech,* Assistant Prosecutor, for Plaintiff-Appellee

*Atty. David J. Betras* and *Atty. Frank L. Cassese*, Betras Kopp, LLC, for Defendant-Appellant

Dated: July 2, 2026

---

**WAITE, P.J.**

{¶1}   Appellant Christopher C. Mele appeals a November 7, 2025 judgment entry convicting him of various offenses related to driving under the influence following a traffic accident.  Appellant's arguments are specifically directed towards three judgment entries by the trial court denying his three separate motions to suppress evidence:  September 30, 2024 (search warrant); March 13, 2025 (refrigeration of blood vials); and June 4, 2025 (time limit to draw blood samples).  Appellant contends that the Columbiana County Municipal Court Judge lacked jurisdiction to issue a warrant for a search in Mahoning County, his blood sample was taken outside of the time limits prescribed by law, and his sample was left unrefrigerated for a lengthy period of time in violation of provisions contained in the Ohio Administrative Code.  Because Appellant's blood sample was left unrefrigerated for thirty-two hours and nineteen minutes between transit periods, Appellant's arguments have merit, in part.  The judgment of the trial court denying suppression of the blood evidence is reversed and the matter is remanded to allow the state to elect whether sufficient grounds remain to proceed with prosecution without the relevant blood test results.

Factual and Procedural History

{¶2}   On August 12, 2023, officers responded to the scene of an accident involving two motor vehicles where multiple persons had been injured.  The accident occurred on State Route 14 near Timberline Road in Columbiana County.  The record reflects that Appellant operated his vehicle left of center and struck an oncoming vehicle, causing significant injuries to its passengers.

{¶3}   Officers responded to the scene at 6:02 p.m.  Patrolman Colin Trayes spoke to Appellant and observed that he exhibited signs of intoxication, including slurred speech

Case No. 25CO0046

and glassy, bloodshot eyes. Following the accident, Appellant was transported to St. Elizabeth's Hospital in Youngstown, Mahoning County.

{¶4} Patrolman Trayes sought and obtained a search warrant from a municipal court judge in Columbiana County to seize a sample of Appellant's blood for purposes of performing a blood-alcohol test. At 10:04 p.m., a registered nurse drew Appellant's blood using an Ohio State Patrol blood draw kit, and transferred the blood vials to the officers. Patrolman Trayes transported the vials to the Columbiana Police Department. He placed them in a temporary evidence locker at 12:33 a.m. on August 13, 2023. It is undisputed this locker was not refrigerated. Patrolman Trayes opted not to refrigerate the samples due to his unsubstantiated belief that refrigeration was not required.

{¶5} Appellant's vials of blood were not mailed to the Ohio State Patrol Crime Lab until 8:52 a.m. on August 14, 2023, approximately forty-seven hours after the draw and thirty-two hours after placement in the evidence locker. It is unclear why mailing was delayed, however the reason is irrelevant, as the issue is whether the sample remained unrefrigerated during the time it was stored and not whether the sample was timely mailed. Nonetheless, the vials were received by the lab on August 16, 2023, two days after mailing. An analysis showed the sample to contain 0.160 grams by weight of alcohol per one hundred milliliters of whole blood.

{¶6} On January 11, 2024, Appellant was indicted on one count of aggravated vehicular assault, a felony of the third degree in violation of R.C. 2903.08(A)(1)(a); one count of vehicular assault, a felony of the fourth degree in violation of R.C. 2903.08(A)(2)(b); and two counts of operating a vehicle under the influence, misdemeanors of the first degree in violation of R.C. 4511.19(A)(1)(a) and R.C.

4511(A)(1)(B). The state later nolled the R.C. 4511.19(A)(1)(B) charge due to the failure of police to obtain a blood sample within the legal time constraints.

{¶7} Appellant's counsel filed three separate motions to suppress the blood test results. On May 23, 2024, he filed a motion seeking to exclude the test results due to violations of the Ohio Administrative Code, arguing that the vials were held in an unrefrigerated storage locker for forty-seven hours before being mailed to the testing lab. On August 14, 2024, Appellant sought exclusion of the testing results because the warrant to seize the blood samples was signed by a Columbiana County Municipal Court judge despite the fact that Appellant was located at the time in a Mahoning County hospital. In his final motion, filed on April 16, 2025, Appellant urged exclusion of the testing results because his blood was drawn outside of the three-hour time limit set forth within the Code.

{¶8} While the trial court found that multiple violations of law had occurred in regard to the blood draw, it determined that suppression was not warranted because officers had substantially complied with the law. The court found that the issuing judge lacked jurisdiction to authorize the warrant, but inferred the error was nonfundamental and did not warrant suppression. Following denial of all suppression motions, on September 5, 2025 Appellant entered into a no contest plea. On November 7, 2025, the court sentenced Appellant to an aggregate thirty-month prison term. Appellant unsuccessfully filed motions seeking stay of execution of his sentence with both the trial court and this Court.

Motion to Suppress

**{¶9}** A motion to suppress presents mixed issues of law and fact. *State v. Lake*, 2003-Ohio-332 (7th Dist.), citing *State v. Jedd*, 146 Ohio App.3d 167, 171 (4th Dist. 2001.). If a trial court's findings of fact are supported by competent credible evidence, an appellate court must accept them. *Id*. The court must then determine whether the trial court's decision met the applicable legal standard. *Id*.

ASSIGNMENT OF ERROR NO. 1

The trial court erred in denying Appellant's motion to suppress because the warrant authorizing seizure of Appellant's blood was issued in violation of Crim.R. 41(A) and Appellant's rights under the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution, where the issuing judge lacked lawful authority to issue the warrant and the warrant was void as a matter of law.

**{¶10}** Appellant argues that the Columbiana County Municipal Court judge lacked authority to issue the warrant for a blood draw to be executed outside of its jurisdiction. Because the judge lacked jurisdiction to issue the warrant, Appellant claims it was invalid and was without legal force. If the warrant was void, there was no need for the trial court to engage in an analysis to determine if the error was fundamental or nonfundamental. Appellant explains that Crim.R. 41(A) bases jurisdiction on the physical location where the search is to occur, not where the investigation began. Appellant urges that not only did the judge lack jurisdiction to issue a warrant, but Patrolman Trayes also lacked

jurisdiction as a Columbiana County Patrolman to execute the warrant in Mahoning County.

{¶11} In response, the state concedes that the judge lacked jurisdiction to issue the warrant, but contends the warrant was not invalid, as this violation is nonfundamental in nature. The state addresses a "split" among Ohio courts as to whether a judge's action in issuing a warrant outside of its jurisdiction requires suppression of the evidence collected under such a warrant.

{¶12} Our analysis begins with a review of Crim.R. 41(A)(1), which provides the authority to a judge to issue a warrant: "[a] search warrant authorized by this rule may be issued by a judge of a court of record to search and seize property located within the court's territorial jurisdiction." By the statute's plain language, a judge may only issue a warrant for a search within its own jurisdiction. Thus, as the state concedes, the judge erred in signing this warrant. The question becomes whether this error should result in suppression of the evidence.

{¶13} The Ohio Supreme Court adopted a test arising out of federal court practice to determine if a violation of Crim.R. 41 is considered "fundamental" or "nonfundamental." *State v. Wilmoth,* 22 Ohio St.3d 251 (1986). The test provides:

> . . . Suppression is not required in all cases where the issuance of a search warrant fails to conform to the dictates of Rule 41. Only a 'fundamental' violation of Rule 41 requires automatic suppression, and a violation is 'fundamental' only where it, in effect, renders the search unconstitutional under traditional fourth amendment standards. * * * Violations of Rule 41 which do not arise to constitutional error are classified

as 'non-fundamental.'   'Non-fundamental' noncompliance with Rule 41 requires suppression only where:

(1) there was 'prejudice' in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.   *United States v. Radlick* [ (C.A. 9, 1978), 581 F.2d 225], *supra*, at 228, quoting *United States v. Burke* [ (C.A. 2, 1975), 517 F.2d 377], *supra*."  (Footnote omitted.)

*Wilmoth* at *263.

**{¶14}** As stated within the quote, the test was created and applied in cases involving a warrant obtained through a deficient affidavit, not on jurisdictional failure. Several Ohio appellate districts have addressed this issue.  The early cases in Ohio held that a judge signing a warrant for execution outside of its jurisdiction did not rise to a Fourth Amendment violation, thus the evidence collected was not subject to suppression. Since those cases were issued, the Third District has come to the opposite conclusion based on its reading of federal caselaw.

**{¶15}** Because Appellant's second assignment of error is dispositive in this case, we need not delve into an exhausting review of the lengthy caselaw addressing this issue. Nonetheless, the vast majority holds that while a municipal court judge lacks jurisdiction to issue an out-of-county search warrant, when the warrant was acquired under all of the processes set up to protect Fourth Amendment principles and the location of the evidence seized does not impinge strongly on those principles, it is a nonfundamental error which

does not rise to the level requiring suppression of any otherwise lawfully obtained evidence. Because the judge in this matter reviewed the search warrant application and found probable cause existed, the warrant itself appears valid. The trial court correctly characterized this as a nonfundamental violation which did not rise to the level necessary to require suppression of the blood evidence obtained. Appellant's first assignment of error is without merit.

<u>ASSIGNMENT OF ERROR NO. 2</u>

The trial court erred in admitting and refusing to exclude the blood toxicology evidence because exclusion is required as the remedy for the Crim. R. 41(A)/Fourth Amendment violation, and because the State failed to establish admissibility under Ohio's statutory and administrative requirements governing blood-alcohol testing.

{¶16} In this assignment, Appellant raises a two-fold argument. He first contends the court erred in allowing the blood evidence to be presented despite the fact that his blood draw occurred four hours and two minutes after the accident, well over the three-hour limit prescribed by Ohio law. He next argues that the vials containing his blood samples were not mailed for testing until forty-seven hours after the draw, and thirty-two hours and nineteen minutes after placement in the evidence locker.

{¶17} Addressing only the second prong of Appellant's argument, the state responds that there is a split among Ohio districts as to whether prolonged periods without refrigeration will result in suppression of blood evidence. The state focuses on a case arising out of the Eleventh District, *State v. Price,* 2008-Ohio-1134 (11th Dist.). In that

case, the Eleventh District held that a six-hour pre-mailing period, along with an eight-day mailing period, was not unreasonable. Hence, the blood test was not subject to suppression. The state also cites caselaw explaining that because regular mail delivery is unpredictable, the police cannot be held responsible for transit time. See *State v. Partin,* 2011-Ohio-794 (12th Dist.). The state also cites to testimony that there was no indication the blood analysis was unreliable.

**{¶18}** The timing of the blood draw will be addressed first. In relevant part, R.C. 4511.19(D)(1)(b) provides:

> In any criminal prosecution or juvenile court proceeding for a violation of division (A) or (B) of this section or for an equivalent offense that is vehicle-related, the court may admit evidence on the presence and concentration of alcohol, drugs of abuse, controlled substances, metabolites of a controlled substance, or a combination of them in the defendant's whole blood, blood serum or plasma, breath, urine, oral fluid, or other bodily substance at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation.

**{¶19}** There appears to be no dispute that this accident occurred at 6:02 p.m. which would mark the start of the time clock for purposes of applying this code section. Hence, the blood draw was required to occur no later than 9:02 p.m. During Patrolman Trayes' testimony, he stated that Appellant's blood was drawn at 10:04 p.m. (Tr., p. 12.) The blood draw, then, occurred one hour and two minutes over the three-hour

requirement of the code. The question becomes whether that one hour and two minute period rises to the level of reversible error on review of the trial court's decision that suppression was unnecessary.

{¶20} As explained by the Ohio Supreme Court, a blood draw that is taken outside of the time limits is inadmissible to prove a violation of R.C. 4511.19(A)(2), (3), (4), however:

> In prosecutions for violations of such sections [R.C. 4911.19(A)(1)], the amount of alcohol found as a result of the chemical testing of bodily substances is only of secondary interest. See Taylor, Drunk Driving Defense (2 Ed.1986) 394, Section 6.0.1. The defendant's ability to perceive, make judgments, coordinate movements, and safely operate a vehicle is at issue in the prosecution of a defendant under such section. It is the behavior of the defendant which is the crucial issue. The accuracy of the test is not the critical issue as it is in prosecutions for per se violations. Furthermore, the statutory presumptions which existed at the time of *Cincinnati v. Sand, supra*, no longer exist. Thus, no presumptive weight can be given to the test results under these sections. The test results, if probative, are merely considered in addition to all other evidence of impaired driving in a prosecution for this offense.

*City of Newark v. Lucas*, 40 Ohio St.3d 100, 104 (1988).

{¶21} Here, the state nolled the per se violation charged under R.C. 4511.19(A)(1)(B) due to the admitted violation of the three-hour rule. The remaining OVI

charge could still proceed so long as the state offered the appropriate supporting testimony. At the suppression hearing, the lab technician did provide the relevant testimony. Hence, Appellant's argument that suppression was required based on the timing of the blood draw is without merit.

{¶22} Turning to the second prong of Appellant's assignment, we find this issue to be dispositive in this matter. The legal requirements related to when and whether bodily fluids, including blood, are required to be refrigerated are set forth in the Ohio Administrative Code ("OAC".) In order to challenge compliance with an OAC regulation, a defendant must file a motion to suppress. *State v. Burnside*, 2003-Ohio-5372, ¶ 24. Once the motion is filed, the state has the burden of demonstrating substantial compliance with the regulation. *Id*. A showing of substantial compliance creates a presumption of admissibility. *Id*. The burden then shifts to the defendant to demonstrate he or she suffered prejudice by anything less than strict compliance. *Id*.

{¶23} The Ohio Supreme Court has held that strict compliance with OAC regulations is not always realistic or possible. *Burnside* at ¶ 34, citing *State v. Plummer*, 22 Ohio St.3d 292 (1986). Thus, "rigid compliance with the Department of Health regulations is not necessary for test results to be admissible." *Burnside* at ¶ 34. This is why only substantial compliance with the OAC regulations is sufficient. *Id*. The *Burnside* Court explained that substantial compliance excuses errors that are "*de minimus*," meaning "minor procedural deviations." *Id*., citing *State v. Homan*, 89 Ohio St.3d 421, 426 (2000).

{¶24} The issue of refrigeration of bodily fluids is governed by OAC 3701-53-06 (G), which provides: "[w]hile not in transit or under examination, all blood, urine and oral

fluid specimens will be refrigerated."  Pursuant to OAC 3701-53-01(A)(9), " 'In transit' means in the possession of an individual employed by a hospital, law enforcement agency, courier, or other delivery entity between the point of collection and a secure storage location or between secure storage location and a laboratory."  It is clear from the law that the time following the sample's collection and its placement in the storage location and the moment it leaves that location for testing, is not considered transit time.  Thus, the time between placement in the storage facility and mailing to a laboratory requires refrigeration of these fluids unless some *de minimus* delay can be deemed reasonable.

{¶25}  The state concedes that the blood sample drawn from Appellant sat in an unrefrigerated storage locker from just after midnight in the very early morning of August 13, 2023 until the vials were mailed out at 8:52 a.m. on August 14, 2023.  As Appellant calculates within his brief, the blood remained unrefrigerated for almost forty-seven hours.  It is possible that this time may actually be greater, as it does not appear that the sample was refrigerated from the time of collection at 10:04 p.m. until the paperwork was completed after midnight.

{¶26}  When asked about the issue at the suppression hearing, Patrolman Trayes testified on cross-examination as follows:

Q.  And you collected it on 8/12 and mailed it on 8/14?  Do I have that down correctly?

A.  Yes.

Q.  Was it refrigerated in your possession at that --- during that time?

Case No. 25CO0046

A. No.

Q. So it is fair for me to say from October 12 at 10:00 until it got mailed on October the 14th, two-and-a-half days, roughly, it was in your evidence locked not under refrigeration; isn't that correct?

A. That is correct.

Q. Are you aware that the Ohio Revised Code and the Administrative Code mandates that those vials be refrigerated while not in transit and not being examined?

A. I'm under the influ --

Q. I'm just asking a question. Do you know whether or not the Ohio Revised Code and the Ohio Administrative Code mandate that while those items are not in transit they need to be refrigerated? That is a yes or no question.

Q. I can't answer it with a yes or no. If you could let me answer that question.

A. Go right ahead.

Q. It is my impression there was a memo several years ago that the State released that these collection kits no longer needed to be refrigerated.

Q. Okay. That is your understanding?

A. Correct.

(Tr., pp. 17-18.)

{¶27} Later, Lindsie Mayfield, a criminologist from the Ohio State Highway Patrol Crime Lab, testified about the issue.

Q. All right. And what did the evidence technician do when they received the evidence? What kind of storage facility did they put it in?

A. It was placed into Evidence Receiving Refrigerator Prelog.

Q. Refrigerator?

A. That's correct.

Q. Why a refrigerator?

A. The Ohio Administrative Code requires it to be refrigerated.

Q. Because you know as a scientist that if it's not stored in a refrigerator it can be corrupted. Fair for me to say?

A. It's a possibility.

Q. Well, that is in the Administrative Code; right?

A. It just says it needs to be stored in refrigeration.

(Tr., pp. 61-62.) She also testified that she was unaware of any memorandum asserting that blood vials did not require refrigeration.

**{¶28}** While the state focuses its attention on the time the vials spent without refrigeration following their mailing to the laboratory, it ignores the time the blood was without refrigeration prior to mailing. Unlike mailing transit time, where the length of time in transit is no longer under law enforcement's control, during the sample's storage in custody prior to mailing, an officer does control whether the sample is refrigerated. Patrolman Trayes admittedly did not refrigerate the vials. He did not provide a reasonable explanation other than his ignorance of the law. His testimony suggests that he relied on an alleged memorandum to the contrary. However, the laboratory technician testified that she had never heard of such memorandum. Even so, as an officer he would likely understand that the OAC cannot be changed by means of a "memorandum." Any action to amend or repeal such law can only be accomplished by the legislature. Regardless, ignorance of the law is never a defense to a violation of Ohio law.

**{¶29}** Contrary to the state's assertions, there does not appear to be a "split" among Ohio courts on this issue. The state is correct in that mailing transit time is not to be weighed against the state. However, the state ignores the analysis requiring a showing as to reasonableness of the pre-mailing time. Because the law includes a reasonableness component, Ohio courts have appropriately applied a case-by-case analysis; there is no bright-line test on the matter.

**{¶30}** Because of the fact specific nature of the caselaw, the issue is best addressed by examining the decisions where the time delay was deemed acceptable against what has been determined to be unacceptable. Beginning with the caselaw

Case No. 25CO0046

finding that a delay in refrigeration during storage was unreasonable, these times range from twelve to twenty-two hours. In these cases, where the fluid samples have remained without refrigeration for these lengths of time, no court has found this to be a "*de minimus*" violation of law.

**{¶31}** In the instant case, the vials were unrefrigerated for a period of thirty-two hours and nineteen minutes after transportation to the storage facility and before mailing. This excludes the time between the blood draw and delivery to the storage location.

**{¶32}** In 2012, the Ninth District found a twenty-two hour and fifteen-minute delay was unreasonable in *State v. Oliver,* 2010-Ohio-6306 (9th Dist.). Similar to the instant case, the *Oliver* court reviewed other violations of the code in addition to the refrigeration issue. While the *Oliver* holding was largely based on another error, it is important to note the court clearly found the delay was unreasonable, despite testimony from the expert witness that there was no indication the failure to refrigerate affected the sample. *Id.* at ¶ 9.

**{¶33}** In *State v. DeJohn,* 2007-Ohio-163 (5th Dist.), while an older version of the applicable code required temperature storage settings that are no longer part of this law, the holding is not predicated on the temperature setting at which the sample was stored. In *DeJohn,* the officer placed the blood vials in a mailer but did not mail the package until seventeen hours after collection, while the vials remained unrefrigerated. As was the case in *Oliver,* testimony was produced at the suppression hearing that "there was no indication of fermentation and that the sample appeared normal." *Id.* at ¶ 8. The *DeJohn* Court held that despite this testimony, the seventeen-hour pre-transit delay was "not a relatively slight delay or minor procedural deviation" and determined that the trial court

erred in failing to suppress the evidence. *Id.* at ¶ 18. Thus, *DeJohn* held that failure to refrigerate stored fluids for seventeen hours was not a *de minimus* violation of the code.

{¶34} In *State v. Mullins,* 2013-Ohio-2688 (4th Dist.), the Fourth District cited *DeJohn* favorably. It found that a twelve-hour delay without refrigeration before mailing was unreasonable, and suppressed the evidence. The *Mullins* Court rejected an argument advanced by the state that the delay was reasonably caused by a shift change and that the officer took the sample towards the end of one shift and mailed the vials at the start of his next shift. The Court reasoned that this argument ran afoul of the law which permits only "clearly *de minimus*" and "minor procedural deviation(s)" from the refrigeration requirement. *Id.* at ¶ 15. As in the prior cases, the Court looked only at the time the sample was being stored by law enforcement and excluded from its determination the time during which the sample was in transit. *Id.* at ¶ 2.

{¶35} In contrast, there is only one case that sanctioned a long period of unrefrigerated storage and that case appears to be an anomaly, having a dissent noting its deviation from the established caselaw. In *State v. Schneider,* 2013-Ohio-4789 (1st Dist.), the court expressly declined to classify *DeJohn* as bad law, but instead distinguished it factually. In *Schneider*, part of the delay in mailing occurred as a result of a policy which required the state trooper to return the sample from the local police district to his assigned OSP patrol post, which was apparently several miles away. The notations on the paperwork indicated that the trooper transported the sample "by hand." *Id.* at ¶ 17. The court found that because of this policy, the lengthy period without refrigeration could have been due to the extra time spent hand delivering the sample which would constitute transit time. We note that in *Schneider,* the OAC had not defined

Case No. 25CO0046

what it meant by "transit" time, causing the court to come up with its own determination of what "transit" time meant. Thus, it appears the court considered as "transit" time both time spent in the mail and in the journey to storage.

**{¶36}** The *Schneider* dissent questioned the majority decision, explaining that the delay in the case was "three times greater than the longest of [prior caselaw] pre-mail periods." *Id.* at ¶ 22 (J. Hendon, dissenting). Noting the opinion was an anomaly based on precedent, the dissent also opined the excessive delay was not a mere procedural deviation.

**{¶37}** Nonetheless, the legislature has since defined "transit time" as time "between the point of collection and a secure storage location or between secure storage location and a laboratory."

**{¶38}** In the instant case, omitting as transit time all of the time from the collection of samples to their arrival at the pre-mailing storage site and the time in transit after being mailed until the samples reached the lab, there were clearly thirty-two hours and nineteen minutes during which the blood was without refrigeration in this case. Even when looking to the *Schneider* opinion, where just under nineteen hours passed between the collection time to mailing, this period is excessive. Thirty-two hours and nineteen minutes passed in this case from placement into the storage facility to mailing, fifteen more hours than in *Schneider.*

**{¶39}** In contrast, in 2016, the Ohio Supreme Court found a pre-mailing delay of four hours and ten minutes was not unreasonable and remanded the matter for a determination of whether the defendant could rebut the presumption of substantial compliance. *State v. Baker,* 2016-Ohio-451. In 2023, the Sixth District held that a delay

of six hours was not unreasonable, and so was determined to be a *de minimus* violation of the code. *State v. Urbanski,* 2023-Ohio-3966 (6th Dist.). In a recent Second District case, the court reviewed whether a one hour delay between collection and refrigeration violated the OAC where the cruiser carrying the blood vials to refrigeration storage was required to respond to an emergency call because a person had jumped into a river. *State v. Quinones,* 2024-Ohio-2552, ¶ 20 (2d Dist.). After the delay for the emergency call, where the vials remained in the cruiser, the vials were transported to the storage refrigerator. The Court found that the delay was *de minimus* and the officer substantially complied with the law. *Id.* at ¶ 53.

{¶40} In this case, the failure to refrigerate the blood samples was clearly unreasonable. The instant matter involves a delay of more than fifteen hours in excess of even the *Schneider* case and such delay cannot be considered a *de minimus* violation of code. The trial court erred in denying Appellant's motion to suppress the evidence on this basis.

{¶41} Inexplicably, despite testimony the vials had been locked in an evidentiary locker during the relevant time, the trial court issued the following: that "[t]he Court finds the blood sample was in transit from the time it was collected on August 12, 2023 until it arrived at the Ohio State Highway Patrol Crime Lab on August 16, 2023." (5/13/25J.E.) The language of the statute clearly defines "in transit" as the time "between the point of collection and a secure storage location or between secure storage location and a laboratory." This language clearly applies only to the time before and after storage, and does not include the time spent while in a secure storage facility. At all times while not "in transit," bodily fluid samples must be refrigerated. The violation here is not *de*

Case No. 25CO0046

*minimus*, and it was error for the court to rule otherwise.  As the state violated the storage requirements for Appellant's blood samples, any blood evidence, including the resulting laboratory report, was required to be suppressed.

**{¶42}**  While the state points out that the definition of transit time was not added to the code until January 23, 2023, the accident at issue occurred on August 12, 2023.  Regardless, caselaw reveals that no court has ever permitted body fluid samples to remain unrefrigerated for a period longer than twelve hours excluding transit time even before the revised language providing a definition of "transit" time.

**{¶43}**  Based on the above, Appellant's second assignment of error has merit in part and is sustained.

Conclusion

**{¶44}**  Appellant contends his three motions seeking suppression of the results of laboratory testing of his blood should all have been granted.  However, his contentions that the search warrant was void because the trial court lacked jurisdiction to sign the warrant and that his blood was drawn shortly after the period provided by law are not well taken.  Appellant's third reason seeking suppression, that his blood samples remained unrefrigerated for such a lengthy period while in storage in police custody that suppression should have been granted is well-taken, however.  The failure to refrigerate for the lengthy period of storage in this case was not reasonable nor did it amount to a *de minimus* violation of law.  Because the blood sample was stored unrefrigerated for at least thirty-two hours and nineteen minutes between transit periods, Appellant's argument has merit and the judgment of the trial court is reversed.  Suppression of all blood-related evidence must be granted and the matter is remanded in order to allow the state to

determine if there are any grounds to proceed with prosecution absent the blood test evidence.

Robb, concurs.

Hanni, J. concurs.

Case No. 25CO0046

---

For the reasons stated in the Opinion rendered herein, Appellant's assignments of error are sustained in part and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is reversed and remanded. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**